Just one second. Good morning, Your Honors, and may it please the Court, Ashok Chandran from the Federal Defenders here on behalf of Mullah Baksh Ghulam Mohammed Saleh. For decades, this Court's case law has been clear. Even the appearance that a particular person was sentenced, even in part, to send a message to their country of origin, violates a fundamental precept of our justice system, that our law punishes people for what they do, not who they are. The District Court here violated that principle when it sentenced Mr. Saleh to a 210-month prison term, which was 50% greater than what probation recommended and what 50% greater than the national average for comparable defendants. In explaining that significant sentence, the District Court's rationale was general deterrence, and it stated it was important for the message to get out, whether in Bahrain or Pakistan or wherever, that drug offenses are going to be punished seriously in the United States. Precedent dating back to Eduardo Franco in 1983, running through Santibanez-Cardona from just a couple months ago, mandate reversal. Just compare the comments that the judge made here to comments made in three recent cases in which this Court vacated and remanded for resentencing. In Arslanuk, a sentence in court noted that the case was being watched by the Georgian community, and the sentence would send a message that Russian organized crime would be punished severely. In Vasquez Drew, a District Court imposed a sentence because it was important that the people in Bolivia understand the consequences of violating the United States drug laws. And most recently, in Santibanez-Cardona, the same District Judge that sentenced Mr. Saleh stated, it is important for the message to get back to drug traffickers in South America and Colombia as well to stop importing cocaine into the United States. In all of those cases, this Court had no trouble vacating the sentences and remanding for resentencing, and it should do the same here. How does general deterrence work? Well, Judge Committee, I think general deterrence as a concept refers to the idea that you can seek to deter others from engaging in the same crime. You can seek to deter broader general others, which this Court has blessed in a number of occasions. You can seek to deter local communities where a particular crime might be more or less common. What you can't do is seek to deter — No, I understand what you're saying about that, but what is the actual mechanism by which general deterrence is effectuated? My understanding of the concept would be that general deterrence refers to if you sentence someone severely, it sends a message that violating this law comes with a significant penalty, so others in the world who are thinking about violating that law would be cautioned against doing so. How does that message get out and how does it get received? You know, I think that there's real questions about — certain district courts and other circuits have questioned the idea that general deterrence has real meaning and can support substantial sentences in the way it has here. Obviously, we're not asking the Court to wade into that and say general deterrence is never appropriate or of very limited significance. There are certainly circumstances where this Court has blessed the use of general deterrence to support significant sentences, but it's clear for decades of precedent from this Court that general deterrence can't be targeted at an unconstitutional group of people, such as people based on race or national origin, which is what happened here. But have — so Congress has commanded in Section 3553A that district court judges take the need for general deterrence into their — into account in imposing sentence, which I think means by definition that there will be some sentences that are higher than they would otherwise be because the need for general deterrence is heightened. So when you have a particular type of crime being conducted maybe more frequently than it has been in the past in a particular place, you're saying that can't be taken into account properly at sentencing? No, Your Honor. That's not what we're saying, right? Of course — How is a judge supposed to refer to the police in that case? Well, a district court can always refer to local crime conditions, can refer to certain districts where the crime is more common. National origin is one of the unconstitutional characterizations on which the Supreme Court and this Court have been clear. Sentences can't be based. But there's no reference to national origin in the transcript, is there? I understand there are some unpublished cases where the facts might look like the facts here, but is there a reference to national — to anybody's national origin in the transcript? Well, I don't think there's any dispute, and I don't read the government's brief to dispute that Bahrain and Pakistan are Mr. Saleh's national origin. So this Court has repeatedly said that — Among others, right? I thought there was some dispute about, if we were interested in the exercise of how do we define this defendant's national origin, I thought the government was saying it would be — that this definition is perhaps over- and maybe even under-broad. That's not how I read the government's brief. If I'm understanding your question, Judge Kamee, the government suggests — There's some third country involved, perhaps? The government suggests that Afghanistan formed part of Mr. Saleh's national origin, but only in response to a straw-man argument that we haven't actually made. They say that if the judge had also included Afghanistan, we would also be making the same argument. I don't think that's a fair characterization, because the only reference to Afghanistan was when trial counsel noted that the part of Pakistan, the province of Pakistan that Mr. Saleh was born in, sits on the border with Afghanistan. Being born in a border province doesn't make you from another country. So, in theory, according to your view of the world here, is the judge allowed to take geography into account in crafting a message directed at general deterrence? And how could the judge have done that here? And how could she have referred to the geographies that she wanted to target her message to? Not because of anybody's national origin, but because that's where the drugs are coming from, and that's where the drug organizations are. What should she have said? Sure. And how different — and how would that be different? Sure, of course. So I think I'll offer two alternatives, right? The judge could target something short of a national origin, say that, for example, Balochistan, the province that Mr. Saleh comes from, is a hotbed for drug activity. I don't know that to be true. Factually, that record, I'm not sure, existed before the district court. But the court could have said, you know, this local community is known for importing drugs. Second, the district court could have said, this offense here, involved by the government's own telling, seven different countries. The drugs were manufactured somewhere in Afghanistan, I believe. The sales and transfers took place in Mozambique and South Africa. So if the judge really wanted to say, I want to deter drug trafficking from those countries that formed the actual offense conduct here, it could have chosen any of the other seven countries, or all of the seven countries. We're not saying that if the judge had said, Bahrain, Pakistan, Mozambique, Greece, South Africa, Afghanistan, we would be here, right? Where the judge was facing offense conduct that involved seven countries in total, and chose only the two that form Mr. Saleh's national origin, particularly where… What if you're choosing the countries you name by some objective metric that is not the defendant's national origin, but is where the bulk of the criminal activity occurred? I think… So it can't be the rule that you have to name every possible country through which the drugs pass. There must be some… Of course not. Yeah, we're not suggesting that the court has to name every country. But here, particularly where Bahrain had probably the most tenuous connection to the offense conduct, I think there was maybe one or two wire transfers that happened to Bahrain. But the drugs themselves never appear to have been there. The drugs were in other locations. The court could have said, you know, I don't want to send the message to Pakistan, Mozambique, and South Africa, where the drugs actually were. You have to stop doing this. That would be totally permissible. But here, where you have the judge focusing on two countries, one of which has, you know, tenuous relevance to the offense conduct, the only question is, could a reasonable observer watching this proceeding have believed that the national origin played some role in the sentence? And given the tenuous connection between Bahrain and the fact that no other countries were mentioned, and I'll just add to that the idea that this didn't come up in the court's discussion of offense conduct. It didn't come up in the discussion of the circumstances of the case or of Mr. Saleh's circumstances. It came up in the discussion of general deterrence. So I'm interested in your point that Bahrain has the most attenuated connection to the offense conduct here. Is that something we could divide from the record, or is that extra record material? I think that's clear from the PSR and from the sentencing transcript itself. So I think for those reasons, when there are other options that would make clear that a judge is focusing on permissible sentencing factors, like where the offense conduct took place, but instead of focusing on those, there's an emphasis on the countries of origin for Mr. Saleh, which again, there's no real dispute that Mr. Saleh is from Bahrain and Pakistan. That at least creates the appearance of impropriety that this court has repeatedly found impermissible in sentencing. I see I'm over my time. I'm happy to answer more questions or wait for a rebuttal. Thank you. You've got some more questions. Good morning. May it please the court. My name is Alexander Lee. I represent the United States of America in this field, as I did before the district court. The district court in this case did not adversely consider the defendant's national origin in imposing its sentence, and there's no risk that a reasonable observer might think that she did. And that's for three structural reasons. The first is simply what she said. She referred to Bahrain or Pakistan or wherever. And taking Judge Committee's question here, what is the purpose of general and what is mechanism? The idea is that people in the countries where the drug trafficking is occurring, this international drug trafficking case, will hear about this and they will be deterred from it. So that is your strongest argument, that the district judge referred to these countries not because they were the countries of the defendant's origin, but because that's where the drug trafficking was happening. But we just heard the rebuttal to that, that actually Bahrain bears only a tenuous connection to the offense conduct here. How do you respond to that? So I don't agree with that. I don't agree with that for two reasons. The first is because the money went to Bahrain, and that's because the defendant himself lived in Bahrain at the time of the conduct. So just to put a finer point on it. Can you be more specific about how the money went through Bahrain? Yes, Your Honor. So the way that this was there were controlled purchases where cash was exchanged for drugs in mostly in countries in Africa, Mozambique and in South Africa. And in exchange for those drugs, money was paid to essentially the couriers for these samples. And the defendant, who was in Bahrain and had told the undercover officer he was in Bahrain, confirmed that he had received the money in Bahrain. My recollection is there were also a Western Union payment made to the defendant's cousin in the United Arab Emirates in Dubai as well. So there was also money that went to the cousin, who I understand was the producer of the drugs. I'm sorry to interrupt. In talking about your argument that, well, this is where the crime occurred, in a sort of a natural reading of what's going on, if the judge is just talking about, well, I'm only mentioning Bahrain and Pakistan because that's where the crime occurred. I think a more natural reading of the record is that's not necessarily what you would focus on. The transactions occurred in these other countries in Africa, Greece. The money, I guess, all of the actions of the sort of the heart of the sale occurred in other countries. And yes, afterwards the money is wired to him in Bahrain. But if this is intended, if someone is going to read this as, well, the reason why the judge is mentioning these two countries is because that's where it occurred. I just don't know that that's a natural read of this record, that that's, that there isn't a reasonable interpretation is that the reason that she's mentioning Bahrain and Pakistan is not because that's where the crime occurred, but because that's where he's from. Well, I think I would say two things. The first is, the question is, is really who are we trying to deter? And the answer can't be that we're trying to deter random people who happen to be meeting in Athens or even perhaps the couriers who had chosen, in this case, Mozambique and South Africa to deliver the drugs. The people we're really trying to deter are people like the defendant, Mr. Saleh, who are the originators of the drugs, the people who are brokering and producing the drugs. So it's general deterrence, but only of the higher-ups and not general deterrence to everyone? Like, hey, don't get involved in this at all? It's a sort of a more targeted general deterrence? No. In fact, I think the district court was clear that it was trying to deter everybody. But the reason that it focused on these two countries and wherever is because the defense itself had said the reason why the defendant engaged in this activity is because he was from Balochistan. I think that's a little bit of an overstatement. I did look at the sentencing submissions and the transcripts. These references to his background, it's very much framed as he grew up in very impoverished circumstances. He did this for financial reasons. I don't read it as the reason he got into drugs is because he's from these countries because he was super poor, as opposed to the reason he got into drugs is because there is something about these countries and the drug trade, and there was nothing else he could do other than sell drugs because that's what they do. I didn't read that as inviting a potential response of sending a message to these countries. Well, I think what the defense did argue was that because of his desperation, and at the time he was in Bahrain, but he grew up in Balochistan, he turned to what he knew, which was drug trafficking. I'll just point to the sentencing submission. This is Appendix 68. The defense argued, quote, as Mr. Saleh has described, everyone in Balochistan has a connection to the drug trade as a means of providing some financial support. And then at the sentencing, an oral argument, the defense went on to explain, I think, as I recall, sort of the drug loops and how heroin trafficking works through Afghanistan and Pakistan. So there was a real tie that the defense had argued between why the defendant engaged in this conduct and these particular locations that he was from, including Pakistan and Afghanistan and Bahrain. And I do think that it was in response, direct response, to those arguments that the district court referenced, Bahrain or Pakistan, or wherever. And it said, setting aside that this is, in fact, where you've made your arguments, I want to deter everybody, no matter what that country may be. What does the record reveal about the prevalence of the problem in Bahrain? Either the narcotic trafficking or the money laundering or payments received? I don't think there's anything in the record about the overall prevalence of drug trafficking or money laundering or money payments to Bahrain. It was, in fact, simply where the defendant happened to be at the time. And again, his cousin was in another Middle Eastern country. So why is there a need to send a message of general deterrence to Bahrain specifically, in this case? Well, I think the district court was referencing Bahrain because the defense had brought it up. But the message has to go out to wherever people happen to be who are importing drugs into the United States. And on the facts of this case, one of those countries was Bahrain. And so I think the first structural feature, again, is simply what the district court said. The second structural feature, as I've alluded to, is what it was responding to. And I really want to point the court to the Coretto case in 2009, the published opinion. And I really think the statement by the district court and the court's response is really on point here. So what the district court said in that case is, it's, I think, terribly important, in particular, in this case, to send a message loud and clear that people, I don't care where they come from, whether they come from the United States, Mexico, any place, if they commit these crimes in the United States, they're going to be treated harshly by the law. And this court said— Does it seem comparable, though, to what we have here? I mean, the judge in that case is explicitly saying, making clear, like, look, it's not about Mexico. It can be any country. I don't care where you come from. I'm sending a message. That's not comparable, really, to what the judge said here, is it? I think it is comparable because the district court said Bahrain or Pakistan or wherever. And by saying or wherever, it was making clear that it wasn't putting any particular weight on those two countries, Pakistan or Bahrain. It recognized that there were lots of countries involved in this offense. And it was saying, wherever it is that the drugs are coming from, I want the message to go out there. Don't do that. And I think for that reason, it really is on all fours with Corretto, where the court said, look, what we care about is, first, was it only in response to what defense counsel had suggested, which was that the defendant should be treated more leniently because prostitution was acceptable in his hometown of Mexico? And second, because the court's intent was to send a message to everyone who engaged in these types of crimes, no matter where they came from. And I think both of those structural features are true in this case. I see my time is up. The third structural feature I'll just mention is that the district court's remark was really brief in passing, which I think contrasts sharply with some of the cases cited by the defense. Can I just add a question? It's probably not a good question because it's probably too general, but I will ask it anyway. I mean, we have a number of cases on these types of comments that seem to go in different directions. You've mentioned the Corretto case, but there are other published decisions where we've talked about and vacated out of concern for appearance where there was a reference to the nationality or country of origin of a defendant. It's a mixed bag in some ways in terms of the cases, many of which are summary orders and so, which matter, they're not precedential, but we still consider them. Given that sort of mixed bag where we have language here, and I guess maybe your position is it really isn't ambiguous, but if it's arguable that yes, this could be interpreted as being a reference to sending a message based on national origin, and if we're concerned about the appearance, does that not push this over the line? Obviously, I know your position is it does not, but I guess I'd like to hear just why not. Your Honor, I think the principle is clear from all of these cases, and the application turns on the facts. The principle is that there can't be any actual or apparent consideration of the defendant's national origin in an adverse way at sentencing. I think in thinking about each of these cases, the courts really looked at the context in which the remarks were made and what exactly was said. I do appreciate that the court has come out in different ways on different facts, but I do think the Corretto case is a good roadmap. It's a published opinion. It's relatively recent. It's from 2009, and it really focused. It honed in on the context that the district court was responding to certain arguments made by defense counsel that are similar to those here, and again, on what the district court actually said, which is that it was trying to send a message to everybody. Okay. Do you concede... Sorry, if I could just ask one more quick question. Do you concede that Bahrain is a country of the defendant's national origin? Yes, it is where he lived at the time of the offense conduct. But what does national origin mean? Well, I take it to mean where the defendant is from, broadly stated. In this case, it appears the defendant had been residing in Bahrain for many years prior to his arrest in the case. Okay. To be honest, I'd just like to make three quick points, first starting where Judge Lee, you left off. I actually would disagree with the notion that the case law here is a mixed bag. So CABA set forth unambiguously that referring to the publicity that a sentence might receive in a defendant's home country and explicitly stating a desire to send a message to that country is the violation. So there's edge cases where it's not about sending a message and national origin comes up in oblique ways. But this Court has consistently found, since CABA, that stating your desire to send a message to a defendant's home country or country of origin is a violation. Moving on to some of the points made by my colleague, on the theory that the error was invited, I think that that ignores both the factual record in the case and this Court's precedent. Factually, as I think came up, the Court's comments weren't in response to Mr. Saleh's counsel's discussion of the privations of his upbringing. As Judge Lee, you noted, counsel was talking about the fact that he grew up without electricity, without running water, that he had difficulty accessing medical care for his wife when she was diagnosed with cancer. It wasn't a standalone plea for mitigation on the basis of living in Pakistan or Bahrain. Second, I think the judge's comments weren't in discussing Mr. Saleh's personal circumstances or history. They weren't in discussing the offense conduct. They were in discussing general deterrence broadly. And then, stepping back, legally, even if Mr. Saleh's trial counsel had made a plea for leniency based on his national origin, that wouldn't excuse the District Court's comments because this Court explicitly rejected that idea in CABA. In CABA, there too, the government argued that the District Court's comments about Ms. CABA's national origin were a natural response to what the government and the defense counsel argued. And this Court said that was no less error because the government seems to have invited it. So even when a party puts the issue of national origin at issue and specifically requests leniency or, in that case, aggravation on the basis of national origin, it's impermissible for a District Court to sentence on that basis. Finally, the government hangs a lot of their argument on the inclusion of this perfunctory qualifier or wherever after listing Mr. Saleh's countries of origin. And this Court has repeatedly found that that kind of catch-all language following a reference to national origin is insufficient. So in Lung, for example, the sentencing judge said that the goal of the sentence was to generally deter others, and that didn't save the fact that later the judge said also others in the Asiatic community. In Cardona, the judge said its sentence was to reinforce a message to Colombians and everyone else in the drug business. In Santibanez, Cardona, just this past December, the sentencing judge said that the goal of the sentence was to send a message to drug traffickers in South America and Colombia in particular. So even when you have these kind of perfunctory catch-all, standalone permissible groups of people to deter, referencing those in addition to national origin doesn't save it. So I see I'm over my time, but if there are more questions, happy to answer them. All right. Thank you very much. Thank you very much, Your Honor. We will take this case under advisement.